## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION,<br>800 I Street NW<br>Washington, DC 20001,<br><br>AMERICAN FEDERATION OF TEACHERS,<br>555 New Jersey Avenue NW<br>Washington, DC 20001,<br><br>MINORITY VETERANS OF AMERICA,<br>918 S Horton Street, Suite 924<br>Seattle, WA 98134,<br><br>VOTEVETS ACTION FUND,<br>2201 Wisconsin Avenue NW, #320<br>Washington, DC 20007,<br><br>THE CENTER FOR AUTO SAFETY, INC.,<br>4400 Jenifer Street, NW, Suite 331<br>Washington, DC 20015,<br><br>CITIZENS FOR RESPONSIBILITY AND<br>ETHICS IN WASHINGTON<br>1331 F Street NW<br>Washington, DC 20004,<br>          *Plaintiffs*,<br><br>          v.<br><br>OFFICE OF MANAGEMENT AND BUDGET,<br>725 17th Street NW<br>Washington, DC 20503,<br><br>ACTING DIRECTOR OF THE OFFICE OF<br>MANAGEMENT AND BUDGET, in their official<br>capacity,<br>725 17th Street NW<br>Washington, DC 20503,<br><br>DEPARTMENT OF GOVERNMENT<br>EFFICIENCY, an advisory committee subject to<br>the Federal Advisory Committee Act,<br>          *Defendants*. | **COMPLAINT FOR<br>INJUNCTIVE, MANDAMUS,<br>AND DECLARATORY<br>RELIEF**<br><br>Case No. 25-cv-167 |

Plaintiffs American Public Health Association, American Federation of Teachers, Minority Veterans of America, VoteVets Action Fund, the Center for Auto Safety, Inc., and Citizens for Responsibility and Ethics in Washington hereby sue Defendants the Office of Management and Budget, the Acting Director of OMB, and the Department of Government Efficiency for violations of the Federal Advisory Committee Act and allege as follows:

## INTRODUCTION

1.      Plaintiffs, which represent a wide range of people and communities, including America's veterans, educators, healthcare workers, public health professionals, consumers, and those who want to understand what the government is discussing (and with whom), challenge the creation and operation of the so-called Department of Government Efficiency ("DOGE") under the Federal Advisory Committee Act ("FACA").

2.      Plaintiffs and those they represent believe that the government should work for the American people and be transparent, efficient, and effective—and that the government can and should do better. Like all Americans, Plaintiffs and those they represent count on the federal government for a wide range of services and programs, from protecting our national and domestic security, to responding to national emergencies and crises, to ensuring our roads and transportation are safe, to caring for our veterans, to supporting life-saving healthcare research and programs, to supporting our nation's schools and universities, to lending to small businesses and entrepreneurs, to ensuring safe workplaces, to protecting our individual rights and enforcing our laws. These services depend on an efficient, effective, and transparent federal government.

3.      The "Department" of Government Efficiency is not a federal department. Elected representatives in Congress have not established nor have they funded such an enterprise. DOGE is, instead, a shadow operation led by unelected billionaires who stand to reap huge financial rewards from this influence and access. Despite these conflicts of interest, DOGE is slated to dictate federal policy in ways that will affect millions of Americans, including those communities that Plaintiffs represent. It is doing so under a shroud of secrecy with none of the transparency, oversight, or opportunity for public participation the law requires.

4.      DOGE's unchecked secrecy, access, and private influence—bought by political loyalty—is anathema to efficient, effective government. Indeed, any federally endorsed, but fundamentally private, advisory effort to shape how our government serves the American people must comply with federal transparency laws, including FACA. Defendants have not done so.

5.      President Donald Trump established DOGE to work with the Office of Management and Budget ("OMB") through "embedded appointees" at various federal agencies to develop recommendations on how to "dismantle," "slash," and "restructure" those agencies' programs.[1] DOGE recommendations will "pave the way" for the Trump-Vance Administration to make drastic cuts to federal programs and services impacting our national security as well as the lives and livelihoods of millions of Americans.[2]

---

[1] *See* Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.
[2] *Id.*

6.      President Trump has tapped two private individuals and campaign donors, Elon Musk and Vivek Ramaswamy, to lead DOGE's work,[3] supported by an identified team of private individuals with ties to Mr. Musk and Mr. Ramaswamy or to President Trump's first Administration.[4] DOGE is already operating as an advisory committee and began operating even before President Trump took office by "sending representatives to agencies across the federal government . . . to begin preliminary interviews" with agency officials, including officials at "the Treasury Department, the Internal Revenue Service and the departments of Homeland Security, Veterans Affairs, and Health and Human Services."[5]

7.      Despite its ongoing operations, Defendants have taken none of the required steps necessary to properly establish DOGE as a federal advisory committee consistent with FACA.

8.      DOGE is also ill-suited to lawfully carry out its sweeping mandate because it does not have a membership that is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2). The experiences of Big Tech and pharmaceutical industry billionaires are not wholly representative of the experiences or interests of the American people. DOGE excludes the perspectives of people with the greatest stake in the services and programs it will recommend eliminating. Instead, its advice and recommendations will reflect only the

---

[3] *Id.*

[4] Ken Thomas et al., *Inside the Early Days of DOGE*, Wall St. J. (Jan. 17, 2025), https://www.wsj.com/politics/policy/doge-federal-reform-musk-ramaswamy-118a3833.

[5] Faiz Siddiqui et al., *DOGE is Dispatching Agents Across U.S. Government*, Wash. Post (Jan. 10, 2025), https://www.washingtonpost.com/business/2025/01/10/musk-ramaswamy-doge-federal-agencies/.

perspectives of industry titans, who have made clear their desire to be free from the regulations they propose to slash.

9.      These significant conflicts of interest are playing out in secret, contrary to FACA's transparency requirements. Of particular note, DOGE's members communicate using the ephemeral messaging application Signal,[6] which is widely used for its auto-delete functionality.[7] DOGE's use of Signal threatens to irreparably deprive Plaintiffs and the American public of records to which they are entitled under FACA.

10.     Plaintiffs therefore respectfully seek relief from this Court in the form of an order enjoining DOGE from continuing its work until it is brought in compliance with FACA, including its obligation to make its records available for inspection by the public, and barring Defendants from accepting or acting upon any advice or recommendations made by DOGE while it is acting outside the law.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under FACA, 5 U.S.C. § 1001 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

12.     The Court further has jurisdiction pursuant to 28 U.S.C. § 1361, which grants original jurisdiction to the district courts over "any action in the nature of mandamus

---

[6] Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times (Jan. 13, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html.

[7] *Set and Manage Disappearing Messages*, Signal Support, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages.

to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Defendants are headquartered in the District of Columbia and a substantial part of the events giving rise to FACA violations also occurred in the District of Columbia.

## PARTIES

14.    Plaintiff the American Public Health Association ("APHA") is a non-partisan, non-profit organization that champions the health of all people and all communities; strengthens the profession of public health; shares the latest research and information; promotes best practices; and advocates for public health issues and policies grounded in scientific research. APHA represents more than 23,000 individual members, who reside in all 50 states, the District of Columbia, and Puerto Rico, and also has 51 state and regional affiliates. APHA is the only organization that combines a 150-year perspective, a broad-based member community, and the ability to influence federal policy to improve the public's health.

15.    Plaintiff American Federation of Teachers ("AFT") is a membership organization representing 1.8 million members, who reside in almost every U.S. state, the District of Columbia, Puerto Rico, and Guam, and who are employed as pre-K through 12th-grade teachers, early childhood educators, paraprofessionals, and other school-related personnel; higher education faculty and professional staff; federal, state, and local government employees; and nurses and other healthcare professionals. AFT's purpose is to promote fairness, democracy, economic opportunity, and high-quality public education, healthcare, and public services for students, their families, and communities their members

serve. AFT does so by ensuring its members receive fair pay and benefits for their critical work, and by fighting for safe working conditions that also benefit students, patients and all those who use public services. Helping children and students is at the core of AFT's mission. So too is the economic security and dignity of AFT's members and their families.

16.    Plaintiff Minority Veterans of America ("MVA") is a nationwide non-profit that works to create belonging and advance equity and justice for the minority veteran community—more than 10.2 million veterans who are or identify as women, people of color, LGBTQI+, or non-religious or religious minority—many of whom have felt marginalized, unseen, or unheard during their time in military service and afterward. MVA routinely engages in direct advocacy about issues of concern to its intersectional movement of veterans to the U.S. Department of Veterans Affairs ("VA") and other federal agencies that administer programs, provide services, or regulate on issues that affect the lives of veterans. Through its work providing resources and programs to help support veterans through social engagement, community connection, financial stability, and leadership development, MVA is in direct contact with veterans, many from historically underserved populations, and its organizational viewpoint is shaped by their lived experiences.

17.    Plaintiff VoteVets Action Fund ("VoteVets") is a non-partisan, non-profit organization incorporated under the laws of the District of Columbia. VoteVets has nearly 2 million supporters across the country with whom it regularly communicates about issues affecting veterans, including the operations, programs, and services available through the VA. VoteVets also routinely communicates with federal policymakers about ways to better care for our veterans.

18.    Plaintiff the Center for Auto Safety, Inc. ("CAS") is a non-partisan, non-profit organization incorporated under the laws of the District of Columbia. It is the nation's premier independent, member driven, non-profit consumer advocacy organization dedicated to improving vehicle safety, quality, and fuel economy on behalf of all drivers, passengers, and pedestrians. It plays a vital role as a preeminent watchdog working to protect consumers by representing their interests before the Department of Transportation ("DOT") and the National Highway Traffic Safety Administration ("NHTSA"), as well as other relevant federal agencies.

19.    Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-partisan, non-profit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring ethics, transparency, and integrity in government. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available to it under FACA, the Freedom of Information Act ("FOIA"), and other federal laws, and widely disseminates those records to the public.

20.    Defendant OMB is a federal agency within the meaning of FACA, 5 U.S.C. § 1001(3), and the APA, 5 U.S.C. § 551(1), that is headquartered in the District of Columbia. As the federal agency President Trump assigned to work with DOGE, OMB has a nondiscretionary duty to ensure that DOGE complies with FACA.

21.    Defendant the Acting Director of OMB is sued in their official capacity. As the acting head of OMB, the Acting Director has a nondiscretionary duty to ensure that DOGE complies with FACA.

22.    Defendant DOGE is a de facto advisory committee within the meaning of FACA, 5 U.S.C. § 1001(2)(A), that is headquartered in the District of Columbia.

## LEGAL BACKGROUND

### I.    The Federal Advisory Committee Act

23.    Congress enacted FACA in 1972 as a "sunshine law" to curb the Executive Branch's reliance on superfluous and secretive "advisory committees": ad hoc, non-federal bodies that counsel governmental decisionmakers on federal policy. Congress was particularly concerned that advisory committees "were often dominated by representatives of industry and other special interests seeking to advance their own agendas." *Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999) (citing H.R. Rep. No. 92-1017 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3491, 3496). To address those concerns, FACA establishes strict requirements for the creation and conduct of such committees that are designed to "promote transparency, accountability, and open public participation in executive branch decisions and prevent informal advisory committees from exerting improper or one-sided influence." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1101 (D.C. Cir. 2021).

24.    FACA defines an "advisory committee" as a "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . that is established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government[.]" 5 U.S.C. § 1001(2)(A).

25.    An advisory committee subject to FACA can be "(i) established by statute or reorganization plan; (ii) established or utilized by the President; or (iii) established or utilized by one or more agencies." *Id.*

26.    An advisory committee is established if it is "created by the federal government" and it is utilized if it is "subject to the federal government's 'actual management or control,' even if it is not created by the government." *VoteVets Action Fund*, 992 F.3d at 1103–04 (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994)).

27.    Consistent with FACA's goal of limiting the number of advisory committees "to the minimum necessary," 5 U.S.C. § 1002(b)(2), a new advisory committee may be established only if: (1) it is "specifically authorized by statute or by the President"; or (2) the head of an agency "determine[s] as a matter of formal record," after consulting with the Administrator of the General Services Administration ("GSA") and publishing "timely notice . . . in the Federal Register," that its creation is "in the public interest in connection with the performance of duties imposed on that agency by law," 5 U.S.C. § 1008(a).

28.    Relatedly, FACA further requires that, before establishing a new advisory committee, "the President, agency heads, or other Federal officials determine . . . whether the functions of the proposed advisory committee are being or could be performed by one or more agencies or by an advisory committee already in existence, . . . by enlarging the mandate of an existing advisory committee," 5 U.S.C. §§ 1004(b)-(c), or through some "other means such as a public hearing or other methods of public engagement," 41 C.F.R. § 102-3.60(b)(2).

29.     Any advisory committee must also have, among other requirements, (i) "a clearly defined purpose"; (ii) a membership that is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee"; and (iii) "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. §§ 1004(b)(1)-(3).

30.     The agency must also create a Membership Balance Plan ("MBP"), which must describe "the agency's plan to attain fairly balanced membership," as well as "the agency's conclusions regarding the points of view that would promote fairly balanced committee membership." 41 C.F.R. § 102-3.60(b)(3).

31.     FACA's implementing regulations specifically provide that, in thinking about the range of viewpoints that ought to be represented, agencies must "fully consider and understand the potential implications or anticipated impacts of the advisory committee's potential recommendations." 41 C.F.R. § 102-3.60(b)(3)(i). That will necessarily require "consideration of the groups and entities potentially affected or interested in such recommendations, . . . so that the agency can make informed decisions on the areas of expertise or perspectives (including relevant lived experience) that would advance the work of the advisory committee." *Id.*

32.     Agencies must then "conduct broad outreach, using a variety of means and methods, to ensure that the call for nominees reaches the interested parties and stakeholder groups likely to possess those points of view." 41 C.F.R. § 102-3.60(b)(3)(ii).

33.     Once these predicate findings are made, the advisory committee is still prohibited from "meet[ing] or tak[ing] any action until an advisory committee charter has been filed" with the GSA Administrator, if the committee will advise the President, or "the head of the agency to whom the advisory committee reports" and the relevant Senate and House committees, if the committee will advise an agency. *See* 5 U.S.C. § 1008(c).

34.     The charter must contain the following information:

(A) the committee's official designation;
(B) the committee's objectives and the scope of its activity;
(C) the period of time necessary for the committee to carry out its purposes;
(D) the agency or official to whom the committee reports;
(E) the agency responsible for providing the necessary support for the committee;
(F) a description of the duties for which the committee is responsible, and, if the duties are not solely advisory, a specification of the authority for the duties;
(G) the estimated annual operating costs for the committee in dollars and person-years;
(H) the estimated number and frequency of committee meetings;
(I) the committee's termination date, if less than 2 years from the date of the committee's establishment; and
(J) the date the charter is filed.

5 U.S.C. § 1008(c)(2).

35.     Once in operation, advisory committees must facilitate public comment and participation by keeping their meetings "open to the public" and providing "timely notice of each meeting" through the Federal Register, 5 U.S.C. §§ 1009(a)(1)-(2), which GSA has interpreted to mean "at least 15 calendar days" notice, unless less notice is justified by documented and "exceptional circumstances," 41 C.F.R. § 102-3.150.

36.     Within reason, interested members of the public must "be permitted to attend, appear before, or file statements with any advisory committee." 5 U.S.C. § 1009(a)(3).

37.     In addition, FACA requires disclosure of "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for" the committee, subject to the exemptions of FOIA. 5 U.S.C. § 1009(b). To meet this obligation, affirmative publication of committee records is required. *See* 41 C.F.R. § 102-3.170 ("[A]gencies may not require members of the public or other interested parties to file requests for non-exempt advisory committee records.").

38.     These materials must be released well before the relevant advisory committee meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Hum. Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992); *see also* 41 C.F.R. § 102-3.170 (requiring "contemporaneous availability of advisory committee records").

39.     FACA requires that "[d]etailed minutes of each meeting," containing specified information, "of each meeting of each advisory committee shall be kept." 5 U.S.C. § 1009(c).

40.     Finally, FACA's transparency obligations extend to a subcommittee or working group of an advisory committee, which must also open its meetings and provide all records to the public if it "makes recommendations directly to a Federal officer or agency, or if its recommendations will be adopted by the parent advisory committee without further deliberations by the parent advisory committee." 41 C.F.R. § 102-3.145.

## II. The Administrative Procedure Act

41.     The APA permits judicial review by persons "suffering legal wrong because of agency action, or adversely aggrieved by agency action." 5 U.S.C. § 702; *see id.* §§ 703-

704. Under the APA, a "reviewing court . . . shall compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2).

### III.    Mandamus

42.    Where a plaintiff can "demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists," *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016), "[t]he district courts shall have original jurisdiction" to compel performance of the duty by issuing a writ of mandamus, 28 U.S.C. § 1361.

## FACTS

### I. President Trump established DOGE to work with OMB and develop recommendations and advice for OMB and other federal agencies.

#### A. President Trump's establishment of DOGE and its membership.

43.    On November 12, 2024, President Trump announced the creation of DOGE and stated "that the Great Elon Musk, working in conjunction with American Patriot Vivek Ramaswamy," would lead the effort.[8]

44.    In establishing DOGE, President Trump made clear that it would not be a formal part of the government, despite its governmental-sounding name. Instead, DOGE was created to "provide advice and guidance from outside of Government" to "the White House and Office of Management & Budget," recommendations that President Trump said

---

[8] *See* Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.

he expects will "pave the way" for the Trump-Vance Administration to "dismantle," "slash," and "restructure" federal programs and services.[9]

     45.    DOGE is operating publicly as a government affiliated entity, holding itself out on X as a "government or multilateral organization."[10]

     46.    President Trump appointed Elon Musk and Vivek Ramaswamy, two private citizens and billionaire campaign donors, to lead DOGE's work.[11]

     47.    Mr. Musk is among the wealthiest people in the world and holds key roles and financial interests in, among other ventures, the space technology company, SpaceX, the automotive company, Tesla, and X, the social media platform formerly known as Twitter.

     48.    Mr. Ramaswamy made his fortune in the pharmaceutical industry and, more recently, founded an investment firm with interests in oil and gas investments and cryptocurrency.[12]

     49.    President Trump subsequently assigned William (Bill) McGinley, a lawyer and lobbyist aligned with the Republican Party who was originally slated to serve as his White House Counsel, "to serve as Counsel to [DOGE]."[13]

---

[9] *See id.*

[10] See Department of Government Efficiency (@DOGE), X, https://x.com/doge?lang=en (last visited Jan. 18, 2025); *see also About Grey Checkmark*, X, https://help.x.com/en/using-x/grey-checkmark (last visited Jan. 18, 2025) ("The grey checkmark is for governments and multilateral organizations.").

[11] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.

[12] Jessica Piper, *How Vivek Ramaswamy Made a Fortune Before Pivoting to Politics*, Politico (May 14, 2023), https://www.politico.com/news/2023/05/14/how-vivek-ramaswamy-made-money-00096046.

[13] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 4, 2024, 12:50 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113595819146944245.

50.    President Trump also appointed Katie Miller to DOGE. Mrs. Miller served as a spokesperson for the Trump-Vance transition team and, previously, held multiple senior communications positions during President Trump's first term.

51.    In addition to Mr. McGinley and Mrs. Miller, Mr. Musk and Mr. Ramaswamy will lead a team that includes Steve Davis and Brad Smith,[14] who will help coordinate the work of various DOGE volunteers.[15]

52.    Mr. Davis, the president of a tunnel construction company owned by Mr. Musk called the Boring Company, has led "[t]he day-to-day operations of DOGE."[16]

53.    Mr. Smith, a healthcare executive who served in President Trump's first administration, has acted as a chief of staff to DOGE.[17]

54.    Mr. Musk and Mr. Ramaswamy, consistent with their assignment from President Trump, have stated that they intend for DOGE to provide advice and recommendations on "three major kinds of reform: regulatory rescissions, administrative reductions and cost savings."[18]

---

[14] Theodore Schleifer & Noah Weiland, *Musk Cost-Cutting Effort Is Being Guided by Health Entrepreneur*, N.Y. Times (Dec. 6, 2024), https://www.nytimes.com/2024/12/06/us/politics/elon-musk-doge-brad-smith-trump.html.

[15] Cat Zakrzewski & Jacqueline Alemany, *Elon Musk Isn't the Only Tech Leader Helping Shape the Trump Administration*, Wash. Post (Jan. 13, 2025), https://www.washingtonpost.com/politics/2025/01/13/andreessen-tech-industry-trump-administration-doge/ (describing Marc Andreessen's involvement with DOGE as an "an unpaid volunteer").

[16] Thomas et al., *supra* note 4.

[17] *See id.*

[18] *See* Elon Musk & Vivek Ramaswamy, *The DOGE Plan to Reform Government*, Wall. St. J. (Nov. 20, 2024), https://www.wsj.com/opinion/musk-and-ramaswamy-the-doge-plan-to-reform-government-supreme-court-guidance-end-executive-power-grab-fa51c020.

55.     Mr. Musk and Mr. Ramaswamy have also confirmed that DOGE will work with "embedded appointees" at various federal agencies to develop its recommendations for "reform."[19] The "reform" they have in mind will carry a hefty price tag for the American people, as Mr. Musk and Mr. Ramaswamy have set a goal of slashing between $500 billion and $2 trillion in federal spending.

56.     DOGE has already begun its operations, as multiple news organizations have reported, by "sending representatives to agencies across the federal government . . . to begin preliminary interviews" with agency officials, including officials at "the Treasury Department, the Internal Revenue Service and the departments of Homeland Security, Veterans Affairs, and Health and Human Services."[20]

57.     On information and belief, DOGE expects to receive classified information from the Trump-Vance Administration and has sought out office space in Washington, DC "where [Mr.] Musk and DOGE staffers could review" such sensitive government material.[21]

58.     On information and belief, DOGE will also be assigned office space for its use on the White House campus at the Eisenhower Executive Office Building and at OMB.[22]

59.     On information and belief, OMB exercises management and control over DOGE's operations.

---

[19] *See id.*

[20] Siddiqui et al., *supra* note 5.

[21] Thomas et al., *supra* note 4.

[22] *Id.*; Schleifer & Ngo, *supra* note 6.

**B. DOGE will provide advice and recommendations on dismantling, slashing, and restructuring federal programs and services.**

60.    President Donald Trump established DOGE to develop recommendations on how to "dismantle," "slash," and "restructure" those agencies' programs.[23] It is now working with OMB toward that end and, together with OMB, will "mak[e] recommendations to Congress and the Trump administration on ways to bring down spending and cut regulations."[24]

61.    When considering President Trump's nomination of Russell Vought for OMB Director, U.S. Senator Rand Paul, Chairman of the Senate Homeland Security and Governmental Affairs Committee, observed that one of the OMB Director's primary responsibilities will be to "collaborate with" DOGE.[25]

62.    Mr. Musk and Mr. Ramaswamy have said that DOGE "will focus particularly on driving change through executive action" that the Trump-Vance Administration can take unilaterally at their urging.[26] That includes, in their view, recommendations for defunding federal programs and services through the impoundment of lawfully appropriated federal funds.[27]

---

[23] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.

[24] Thomas et al., *supra* note 4.

[25] Press Release, U.S. Senate Comm. on Homeland Sec. & Governmental Affs., Dr. Paul Delivers Opening Remarks at Hearing on Nomination of Russell Vought to be Director of the Office of Management and Budget (Jan. 15, 2025), https://www.hsgac.senate.gov/media/reps/dr-paul-delivers-opening-remarks-at-hearing-on-nomination-of-russell-vought-to-be-director-of-the-office-of-management-and-budget/.

[26] Musk & Ramaswamy, *supra* note 18.

[27] *Id.*

63.    A primary focus for DOGE's defunding recommendations will be the estimated "1,200+ programs that are no longer authorized but still receive appropriations" totaling more than $516 billion.[28]

64.    Such programs, to which Congress allocates money regularly, implicitly authorizing them, provide health care for veterans, the largest such program; funding for drug research and development; opioid addiction treatment; and resources for education, the National Aeronautics and Space Administration, the Federal Aviation Administration; HIV/AIDS; and tuberculosis and malaria treatment and research, among other things.[29]

65.    DOGE has already begun the work of identifying programs, services, and regulations it will recommend cutting.[30]

66.    Through its social media account on X, DOGE stated it "is undergoing a serious analysis of wasteful and burdensome regulations" and called for public feedback, including "the CFR provision, the relevant text of the regulation, and the adverse consequences of said regulation."[31]

67.    Working from a report published by a conservative advocacy organization, the Wisconsin Institute for Law and Liberty, the members of DOGE are scrutinizing

---

[28] Vivek Ramaswamy (@VivekGRamaswamy), X (Nov. 13, 2024, 1:19 PM ET), https://x.com/VivekGRamaswamy/status/1856763732363546813.

[29] *See* Jacob Bogage, *10 Programs That Could Be on the 'Government Efficiency' Chopping Block*, Wash. Post (Nov. 16, 2024), https://www.washingtonpost.com/business/2024/11/16/trump-musk-ramaswamy-doge-program/.

[30] *See* Thomas et al., *supra* note 4 ("Some of DOGE's early work has involved reviewing past audits of federal agencies, to help guide the work and identify potential cuts and inefficiencies.").

[31] *See* Department of Government Efficiency (@DOGE), X (Dec. 1, 2024, 1:00 AM ET), https://x.com/DOGE/status/1867087144424182178.

programs viewed as promoting diversity, equity, and inclusion ("DEI").[32] The programs being examined provide support for small businesses, farmers, veterans, and more.[33]

68.    DOGE has made clear that eliminating federal initiatives aimed at addressing racism will be a constant in its work and it has already called out scientific studies funded by the National Institutes of Health ("NIH") as examples of the programs it will target.[34]

69.    DOGE's co-leader, Mr. Musk, has also identified the Consumer Financial Protection Bureau as an area of federal government to "delete,"[35] despite the fact that it has saved American consumers billions of dollars. Mr. Ramaswamy has likewise stated that the incoming administration should nullify a CFPB rule limiting overdraft fees and limit the power of the agency across the board.[36]

70.    DOGE's members are not only speaking to each other about these ideas and recommendations, they have also begun meeting with "staffers at more than a dozen federal agencies," including "the Treasury Department, the Internal Revenue Service and the departments of Homeland Security, Veterans Affairs, and Health and Human Services."[37]

---

[32] *See* Jacob Bogage & Faiz Siddiqui, *Musk's DOGE Weighs Recommendations to Cut Federal Diversity Programs*, Wash. Post (Jan. 16, 2025), https://www.washingtonpost.com/business/2025/01/16/musk-ramaswamy-diversity-doge-dei/.

[33] *See id.*

[34] *See* Department of Government Efficiency (@DOGE), X (Nov. 30, 2024, 10:42 AM ET), https://x.com/DOGE/status/1862884929954017308.

[35] Elon Musk (@elonmusk), X (Nov. 27, 2024, 12:35 AM ET), https://x.com/elonmusk/status/1861644897490751865.

[36] Ayelet Sheffey, *DOGE Doubles Down on Eliminating the Government Agency That's Cracking Down on Overdraft Fees*, Bus. Insider (Dec. 26, 2024), https://www.businessinsider.com/doge-delete-cfpb-elon-musk-vivek-ramaswamy-overdraft-fees-trump-2024-12.

[37] Siddiqui et al., *supra* note 5.

### C. DOGE lacks a fair balance of relevant viewpoints among its members, who have substantial personal financial conflicts of interest.

71.     Despite DOGE's sweeping mandate, which implicates a wide range of issue areas, programs, and services in which Plaintiffs have a direct interest, DOGE's membership does not include anyone who brings the perspective of the people and communities that will be most directly affected by the drastic cuts to the federal programs and services that DOGE will recommend.

72.     For instance, although Mr. Ramaswamy has declared "[h]ealthcare [to be] a critical frontier for DOGE,"[38] and DOGE has already begun scrutinizing NIH research funding decisions viewed as supporting DEI,[39] it does not have any members with a background or focus on public health or patient safety. Those with a background in healthcare, like Mr. Smith, bring a business perspective on healthcare and health systems. That focus on profitability may, in some cases, complement public health goals, though not always. And it nevertheless reflects a distinct perspective from the one public health advocates, like Plaintiff APHA, would bring to DOGE's work.

73.     Mr. Ramaswamy also sees reducing federal support for and oversight of public education to be the "key solution to our federal deficit problem."[40] And Mr. Musk has argued that efforts to promote diversity, equity, and inclusion in public education— concerns he derides as "the woke mind virus"—is to blame for flagging test scores.[41] Yet,

---

[38] Vivek Ramaswamy (VivekGRamaswamy), X.com (Nov. 23, 2024, 3:44 PM), https://x.com/VivekGRamaswamy/status/1860469404603154707.

[39] *See* Department of Government Efficiency (@DOGE), X.com (Nov. 30, 2024, 7:42 AM), https://x.com/DOGE/status/1862884929954017308.

[40] Bianca Quilantan, *DOGE vs. the Education Department*, Politico (Jan. 6, 2025), https://www.politico.com/newsletters/weekly-education/2025/01/06/doge-vs-the-education-department-00196523.

[41] *See id.*

as publicly reported, DOGE does not include any educators or advocates for students, such as Plaintiff AFT.

74.    The quantity of federal spending DOGE hopes to eliminate also implicates the interests of veterans because the proposed cuts will be impossible to implement without adversely affecting the quality of healthcare offered to veterans. Similarly, recommending eliminating 75 percent of the federal workforce, as DOGE has promised to do, will have a staggering effect on employment rates for veterans, which constitute nearly 30 percent of the federal workforce.[42] And yet, DOGE does not include a single veteran's group, like Plaintiffs MVA or VoteVets.

75.    Likewise, the drastic cuts DOGE has forecasted will greatly diminish the federal government's ability to provide proper oversight of the automotive industry and diligently investigate, document, and address issues that threaten the safety of drivers, passengers, and pedestrians. Federal automotive regulators, like DOT and NHTSA, are struggling to carry out their full mission under current funding levels and their work will only get harder as they adapt to sweeping technological changes in the industry, such as autonomous vehicles. Substantial cuts to their funding or legal authority will deal a crushing blow to their ability to function with the end result being greater risk to those on the road.

76.    Despite these pressing challenges, DOGE does not include anyone who brings a consumer- and safety-oriented perspective to automotive safety, as Plaintiff CAS

---

[42] Press Release, Nat'l Fed'n of Fed. Emps., So-called Department of Government Efficiency Would be Responsible for Nearly 500,000 Veteran Layoffs if Musk and Ramaswamy Execute Stated Plans (Nov. 20, 2024), https://nffe.org/press-release/so-called-department-of-government-efficiency-would-be-responsible-for-nearly-500000-veteran-layoffs-if-musk-and-ramaswamy-execute-stated-plans/.

does, to balance the perspective of Mr. Musk, whose car company, Tesla, is currently being investigated by NHTSA to determine if its self-driving software has safety issues.[43]

77.    Nor does DOGE include representative voices from civil society, like CREW, who have long shared DOGE's stated mission of promoting government efficiency and shining a light on genuine waste, fraud, and abuse. DOGE's proposed cuts will undermine those goals. They will exacerbate the already-substantial delays FOIA requesters experience in obtaining federal records, thwarting a critical mechanism for government transparency and accountability. Government ethics experts such as CREW are likewise absent from DOGE. That is especially problematic given the serious conflicts of interests concerns posed by DOGE business owners wielding outsized influence over and unfettered access to the agencies that regulate them.

78.    These glaring omissions in the viewpoints represented by DOGE's current membership are hardly surprising, given that Defendants undertook no outreach to ensure that DOGE would have the benefit of a membership with a fairly balanced set of viewpoints.

79.    Indeed, the extent of DOGE's apparent outreach to interested participants has been its calls for "super high-IQ small-government revolutionaries willing to work 80+ hours per week on unglorious cost-cutting," and individuals with "exceptional ability" in software and informational security engineering, to apply for *employment* with DOGE by sending a direct message to its X account.[44]

---

[43] Max Hauptman, *Full Self-Driving Software in 2.4 Million Tesla Vehicles Faces Probe by Federal Agency*, USA Today (Oct. 18, 2024), https://www.usatoday.com/story/money/cars/2024/10/18/tesla-full-self-driving-software-nhtsa-investigation/75730547007/.

[44] *See* Department of Government Efficiency (@DOGE), X (Nov. 14, 2024, 10:03 AM

80.     On information and belief, there have been no publicly announced opportunities for those interested in serving as a *member* of DOGE to apply. The only members are President Trump's allies and donors that he has announced or that have been reported.

81.     Nevertheless, Plaintiffs VoteVets and CREW have taken proactive steps to indicate their willingness to participate in DOGE's work and to provide their perspectives on government efficiency, which are currently unrepresented.

82.     In a letter dated January 14, 2025, CREW urged DOGE to include groups representing the broad array of stakeholders, like Plaintiffs, who will be directly affected by DOGE's work. DOGE did not respond.

83.     Likewise, VoteVets attempted to contact DOGE by sending a direct message to its official X account to request an opportunity for VoteVets Senior Advisor Major General (ret.) Paul Eaton to participate as a member of DOGE in order to represent the interests and provide the perspective of America's veterans. DOGE did not respond.

84.     These efforts were likely taken in vain, unfortunately. In response to similar requests to participate in DOGE's work made by non-partisan, non-profit organizations, Mrs. Miller, a spokesperson for the Trump-Vance transition and DOGE member, indicated that participation on DOGE is closed, at least to anyone who might express disagreement with DOGE's premise or the Trump-Vance Administration's policy preferences.[45]

---

ET), https://x.com/DOGE/status/1857076831104434289; Department of Government Efficiency (@DOGE), X (Jan. 7, 2025, 12:38 AM ET), https://x.com/DOGE/status/1876503769489281261.

[45] *See* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, N.Y. Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html ("President Trump's Truth made clear we have no room in our administration for Democrats.").

85.     Plaintiffs that have not shouted their willingness to participate as a member of DOGE into the void also have an interest in their viewpoints being represented, even if that representation comes through another individual or organization.

86.     Defendants have also failed to provide assurances that DOGE's advice and recommendations will be the product of the independent judgment of its members, as opposed to undue influence from President Trump or the members' respective special interests.

87.     For instance, on information and belief, Defendants have taken no steps to insulate DOGE's recommendations from the personal financial conflicts of its members, including the staggering conflicts of Mr. Musk, whose "companies were promised $3 billion across nearly 100 different contracts last year with 17 federal agencies."[46]

**D. DOGE's establishment and operation lacks transparency and has deprived Plaintiffs of essential information.**

88.     While DOGE is already operational, Defendants have taken no action to comply with FACA, including by making a formal determination that DOGE's creation serves the public interest, nor have they filed a charter identifying the scope of DOGE's work.

89.     Public reporting indicates that DOGE's members are communicating about DOGE's work using the ephemeral messaging application Signal,[47] which is widely used for its auto-delete functionality.[48]

---

[46] *See* Eric Lipton et al., *U.S. Agencies Fund and Fight With Elon Musk. A Trump Presidency Could Give Him Power Over Them*, N.Y. Times (Oct. 21, 2024), https://www.nytimes.com/2024/10/20/us/politics/elon-musk-federal-agencies-contracts.html.

[47] Schleifer & Ngo, *supra* note 6.

[48] *Set and Manage Disappearing Messages*, *supra* note 7.

90.     Mr. Musk has, in his personal capacity, previously used the auto-delete functionality of Signal, even in settings where he appears to have had a legal obligation to preserve those messages.[49]

91.     DOGE records, including those existing on Signal, provide the public with critical information about who is influencing DOGE's recommendations to the Trump administration, what viewpoints and communities are being excluded, and why the "advisory committee performs a necessary function not already being performed." 5 U.S.C. § 1004(a).

92.     There have been no public assurances that DOGE's records, including those existing on Signal, will be made available to the public.

93.     For each of their distinct areas of focus, Plaintiffs have a clear interest in understanding which issues and sources of information DOGE is considering and what recommendations this influential advisory body will make to the Trump-Vance Administration.

94.     DOGE's continued use of the ephemeral messaging application Signal to communicate exacerbates Plaintiffs' injuries by irreparably depriving them of government records to which they are entitled under FACA, which impedes their ability to carry out their respective organizational missions.

*** 

---

[49] *See* Kevin T. Dugan, *Elon Musk Got Caught Deleting Messages—and 3 Other Takeaways From His Latest Court Hearing*, Intelligencer (Sept. 29, 2022), https://nymag.com/intelligencer/2022/09/elon-musk-caught-deleting-messages-about-the-twitter-deal.html.

95.    DOGE's unnecessary and unjustified creation, lack of transparency, lack of viewpoint diversity, and failure to prevent inappropriate influence by special interests, as well as Defendants' failure to file a charter before DOGE began its work, are violations that strike at the heart of FACA.

96.    Now, while skirting FACA's requirements, DOGE is moving quickly to deliver recommendations to the Trump-Vance Administration.

97.    President Trump has instructed DOGE to conclude its work by July 4, 2026 but DOGE will provide recommendations well before then. According to Mr. Ramaswamy, DOGE will be advising federal agencies and providing recommendations "on a real time basis,"[50] "starting on Jan[uary] 20."[51]

98.    To stop these violations of FACA before the illegally operating DOGE begins providing recommendations on cutting important government programs and services affecting the people and communities Plaintiffs serve, Plaintiffs respectfully seek relief from this Court in the form of an order enjoining DOGE from continuing its work until it is brought in compliance with FACA, compelling it to release all DOGE records to the public, and barring Defendants from accepting or acting upon the advice and recommendations of DOGE made based on work conducted while it is not in compliance with FACA.

---

[50] Vivek Ramaswamy (@VivekGRamaswamy), X (Nov. 17, 2024, 11:11 AM ET), https://x.com/VivekGRamaswamy/status/1858181075421303134.

[51] *See* Vivek Ramaswamy (@VivekGRamaswamy), X (Dec. 2, 2024, 8:59 PM ET), https://x.com/VivekGRamaswamy/status/1863764934514938118.

## CLAIMS FOR RELIEF

### Count One
### APA, 5 U.S.C. § 706
### Violation of FACA: Unlawful Establishment and Utilization of a Federal Advisory Committee

99.    Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

100.    DOGE is an advisory committee within the meaning of FACA because it is "a committee, board, commission, council, conference, panel, task force, or other similar group" that has been "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A).

101.    FACA requires that certain findings and certifications are made and steps are taken before an agency may create an advisory committee. Defendants failed, in multiple respects, to comply with these requirements.

102.    In particular, on information and belief, Defendants have failed to consult with the Administrator of GSA, explain why DOGE is "in the public interest in connection with the performance of duties imposed on that agency by law," 5 U.S.C. § 1008(a)(2), or determine whether "the functions" of DOGE "could be performed by one or more agencies or by an advisory committee already in existence." 5 U.S.C. §§ 1004(b), (c).

103.    Defendants have also failed to ensure that DOGE has (i) "a clearly defined purpose"; (ii) a membership that is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee"; and (iii) "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any

28

special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. §§ 1004(b)(1)-(3), (c).

104.    DOGE's membership fails to include the perspectives of those connected to the people with the greatest stake in the services, programs, and regulatory protections it will recommend eliminating, like Plaintiffs. Those same members not only bring a far too narrow set of perspectives and experiences to DOGE's work but also have significant financial conflicts and political ties, which call into question their ability to be objective and not inappropriately influenced President Trump or their own special interests. Defendants have failed to take affirmative steps to prevent those conflicts from influencing DOGE's advice and recommendations.

105.    Finally, Defendants have failed to file a charter for DOGE, 5 U.S.C. § 1008(c), despite the fact that DOGE's work has already begun or, at a minimum, began as soon as President Trump was sworn into office.[52]

106.    Accordingly, Defendants' establishment and utilization of DOGE was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law," *id.* § 706(2)(D).

107.    Defendants' failure to make public its prerequisite findings and determinations regarding DOGE, or to file a charter, also constitutes agency action that was "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), "or otherwise not in accordance with law," *id.* § 706(2).

---

[52] *See* Vivek Ramaswamy (@VivekGRamaswamy), X (Dec. 2, 2024, 8:59 PM ET), https://x.com/VivekGRamaswamy/status/1863764934514938118 (asserting that DOGE would "carefully scrutinize" certain government contracts "starting on Jan 20").

108.    Defendants' failure to comply with FACA in relation to DOGE is "final agency action for which there is no other adequate remedy in a court," *id.* § 704, and Plaintiffs are "entitled to judicial review" of those FACA violations under the APA, *id.* § 702.

**Count Two**
**APA, 5 U.S.C. § 706**
**Violation of FACA: Failure to Make DOGE's Records Publicly Available**

109.    Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

110.    FACA requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist." 5 U.S.C. § 1009(b).

111.    DOGE has failed to make any of its records publicly available.

112.    FACA committees must preserve substantive records in accordance with the Federal Records Act and Presidential Records Act, as applicable.[53]

113.    Public reporting indicates that DOGE's members are communicating using the ephemeral messaging application Signal,[54] which is widely used for its auto-delete functionality.[55]

---

[53] See *General Records Schedule 6.2: Federal Advisory Committee Records*, Nat'l Archives (Aug. 2015), https://www.archives.gov/files/records-mgmt/grs/grs06-2.pdf.
[54] Schleifer & Ngo, *supra* note 6.
[55] *Set and Manage Disappearing Messages*, *supra* note 7.

114.    DOGE's use of Signal threatens to irreparably deprive Plaintiffs and the American public of records to which they are entitled under FACA, including critical information regarding DOGE's activities, areas of focus, and recommendations, and frustrate Plaintiffs' respective missions to understand and educate the public and their constituents regarding federal policy developments in their areas of expertise.

115.    Defendants' failure to disclose and maintain these records in violation of FACA is an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

116.    Plaintiffs have "no other adequate remedy in a court," *id.* § 704, and are therefore "entitled to judicial review" of this FACA violation under the APA, *id.* § 702.

**Count Three**
**APA, 5 U.S.C. § 706**
**Violation of FACA: Failure to Make DOGE Fairly Balanced**

117.    Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

118.    FACA requires that an advisory committee be "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2).

119.    DOGE is not fairly balanced because it excludes the perspectives of many people, including Plaintiffs' constituencies, who have a direct stake in the services and programs DOGE will recommend eliminating and a direct interest in DOGE's stated mission.

120.    DOGE has provided the public with no formal opportunity to apply for membership, but Plaintiffs have nonetheless asked for representation on DOGE to no avail.

The Trump-Vance Administration has conveyed that DOGE membership is closed and will not include perspectives that do not align with those of the Trump-Vance Administration.

121.    Plaintiffs are directly injured by their lack of representation on DOGE and their inability to influence its recommendations on equal terms with DOGE's members.

122.    Defendants' establishment and utilization of DOGE without the fairly balanced membership required by FACA was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law," *id.* § 706(2)(D). It is also "final agency action for which there is no other adequate remedy in a court," *id.* § 704, and Plaintiffs are "entitled to judicial review" of those FACA violations under the APA, *id.* § 702.

**Count Four**
**Mandamus, 28 U.S.C. § 1361**
**Violation of Non-Discretionary Duties under FACA**

123.    Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

124.    As alleged above, *supra* ¶¶ 20-21, 23-40, FACA imposes non-discretionary duties on Defendants with respect to the establishment, utilization, disclosure of records, and fair balance of federal advisory committees.

125.    As alleged above, *supra* ¶¶ 43-98, Defendants have violated each of these non-discretionary duties under FACA.

126.    As alleged above, *supra* ¶¶ 14-19, 71-86, 94-95, Plaintiffs have a clear right to relief from Defendants' FACA violations.

127.    To the extent that the Court finds that the APA does not authorize any of the relief sought herein, mandamus is Plaintiffs' only adequate remedy.

128.    Plaintiffs are therefore entitled to a writ of mandamus compelling Defendants to comply with their non-discretionary duties under FACA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1.    issue an injunction and/or a writ of mandamus compelling Defendants to take affirmative steps to ensure that records of DOGE remain available for public access;

2.    declare that Defendants' creation and administration of DOGE violates the APA, FACA, and FACA's implementing regulations, and that the establishment of DOGE is therefore unlawful;

3.    set aside all decisions attendant to DOGE's creation, including the appointments of individual committee members and alternate members;

4.    through the named Defendants, enjoin DOGE and any of its subdivisions from meeting, advising federal agencies, and otherwise conducting committee or subcommittee business until it becomes compliant with FACA;

5.    order Defendants to immediately release all materials prepared for DOGE or its subcommittees, and to provide a *Vaughn* index for such material and those withheld from production for any reason;

6.    enjoin Defendants from relying on any recommendations or advice from DOGE made based on work conducted while it is not in compliance with FACA;

7.    award Plaintiffs their costs, attorneys' fees, and other disbursements for this action; and

8.    grant any other relief this Court deems appropriate.

Dated: January 20, 2025

Respectfully submitted,

*/s/ Robin F. Thurston*
Robin F. Thurston (D.C. Bar No. 462679)
Aman T. George (D.C. Bar No. 1028446)
Benjamin Seel (D.C. Bar No. 1035286)
Skye L. Perryman (D.C. Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Fax: (202) 796-4426
rthurston@democracyforward.org
ageorge@democracyforward.org
bseel@democracyforward.org
sperryman@democracyforward.org

Donald K. Sherman* (N.Y. Bar No. 4636742)
Nikhel S. Sus (D.C. Bar No. 1017937)
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20004
Telephone: (202) 408-5565
Fax: (202) 588-5020
dsherman@citizensforethics.org
nsus@citizensforethics.org

*Pro hac vice* motion forthcoming

*Counsel for Plaintiffs*